**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KEILA GARCÍA-COLÓN, | |
| **Plaintiff,** | |
| v. | **CIVIL NO. 21-1211 (RAM)** |
| STATE INSURANCE FUND CORPORATION, | |
| **Defendant.** | |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Plaintiff Keila García-Colón's ("García" or "Plaintiff") *Request for Permanent Injunctive Relief* ("*Motion*") and Defendant State Insurance Fund Corporation's ("SIFC" or "Defendant") *Opposition to Plaintiff's Request for Permanent Injunctive Relief* ("*Opposition*"). (Docket Nos. 323 and 325). For the reasons below, the Court **DENIES** Plaintiff's *Motion*.

## I.    BACKGROUND

This *Motion* follows a trial on Plaintiff's claim that her employer, SIFC, retaliated against her for raising claims of sexual harassment, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* and Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. 29 §§ 194, *et seq.* (Docket Nos. 1 and 318).

Plaintiff's case began in May 2021 when she filed her *Complaint* seeking both money damages and a permanent injunction.

(Docket No. 1). On the same day she filed her lawsuit, García moved for a preliminary injunction, requesting an order that SIFC protect her from physical and emotional harm in her workplace. (Docket No. 2). Among other allegations of retaliation, Plaintiff averred that a co-worker, Migdalia Baerga-Avilés ("Baerga"), was emotionally harassing her and threatening her with bodily injury. Id. at 6, 9. Plaintiff alleged Baerga was doing this "at the behest of Magalis Soto, former Regional Director of the CSIF in Arecibo."[1] Id. at 9.

SIFC opposed García's motion for an injunction, but the parties later agreed to a stipulated preliminary injunction, which the Court entered on June 4, 2021. (Docket No. 50). In relevant part, the injunction requires that:

> SIFC keep Ms. Baerga working remotely from her residence or at any of its other offices, so long as she does not come into contact with Plaintiff until the time for ruling on the request for permanent injunction is adjudicated. Accordingly, the CSIF will ensure that Ms. Baerga and Plaintiff will not be working at the same place.

Id.

After Plaintiff's retaliation claim survived summary judgment, her case went to trial beginning May 2, 2024. (Docket Nos. 225 and 297). At trial, Plaintiff presented evidence in an effort to show Defendant retaliated against her in multiple ways,

---

[1] Throughout this case, "CSIF" has been used interchangeably with "SIFC."

including by disciplining her on the basis of false accusations by
fellow employees and wrongly referring complaints about her to
SIFC's Office of Labor Relations ("OLR"). García also attempted to
show SIFC retaliated in March 2023 by moving her from the Arecibo
Regional Office to the Manatí Dispensary, both of which are located
in the SIFC Arecibo Region. (Docket No. 315 at 17). Finally,
Plaintiff presented evidence that Baerga had harassed her.
However, García did not request a jury instruction regarding SIFC's
potential vicarious liability for the conduct of non-supervisor
employees like Baerga, and so the final jury instructions did not
include one. (Docket Nos. 215 and 315 at 38).

The jury returned a verdict in favor of Plaintiff and awarded
her compensatory damages of $200,000. (Docket No. 318). The jury
found SIFC had subjected Plaintiff to retaliation and that it
failed to take reasonable care to prevent a hostile work
environment. Id. at 1-2. Neither Plaintiff's nor Defendant's
proposed verdict form required the jury to specify which acts
constituted retaliation. (Docket Nos. 214 and 256). Therefore, **the
final verdict form did not require the jury to specify how
Defendant retaliated against Plaintiff or what conduct constituted
the retaliation.**

On May 24, 2024, Plaintiff brought this *Motion* requesting
permanent injunctive relief pursuant to Title VII. (Docket No. 323

at 3, 5, 8). García asks that the Court relocate her from the Manatí Dispensary to the Arecibo Regional Office; remove Baerga from the Arecibo Regional Office; order various documents relating to past complaints against García be expunged from her SIFC record; order SIFC to cease and desist from further retaliation against García; and explain the requested injunction to various SIFC officials. Plaintiff contends the requirements for equitable relief are satisfied because she prevailed on the merits of her case and because an injunction would correct a past wrong and prevent future retaliation. Id. at 4-5.

Defendant opposed Plaintiff's *Motion* on June 7, 2024. (Docket No. 325). SIFC argues removing Baerga from the Arecibo Regional Office would conflict with Baerga's accommodation under the Americans with Disabilities Act ("ADA"), which limits where she can work. Id. SIFC contends further that moving García would conflict with García's Collective Bargaining Agreement ("CBA"). Id. SIFC also asserts García's transfer was not retaliatory because SIFC had legitimate business reasons for moving her. Id. As to Plaintiff's request for expungement, SIFC argues it is unnecessary. Defendant avers no action was taken against García on the basis of co-worker complaints and that documentation regarding those complaints will never be considered for future disciplinary actions. Id. Finally, SIFC argues the requirements for a permanent

injunction are not met since the money damages awarded by the jury are sufficient to compensate Plaintiff, the injunction would conflict with the CBA and ADA, and SIFC has a need for nurses at the Manatí Dispensary. Id.

On June 11, 2024, Plaintiff filed a motion informing the Court she would not file a reply and requesting her motion for a permanent injunction be deemed submitted for consideration. (Docket No. 327).

## II.  LEGAL STANDARD

Title VII gives district courts the following discretion to grant injunctive relief when an employer is found to have engaged in intentional employment discrimination:

> If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1).

Thus, once a jury finds an employer liable for intentional discrimination, the district court normally has broad power to fashion equitable relief. EEOC v. KarenKim, Inc., 698 F.3d 92, 100 (2d Cir. 2012) (citation omitted); Franks v. Bowman Transp. Co.,

424 U.S. 747, 764 (1976). Such relief may serve to make the victim whole or to prevent future discrimination. *See* Brown v. Trs. of Boston Univ., 891 F.2d 337, 360-61 (1st Cir. 1989); KarenKim, Inc., 698 F.3d at 100.

Injunctive relief "does not follow from success on the merits as a matter of course." KarenKim, Inc., 698 F.3d at 100 (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 32 (2008)). Rather, "the question of what equitable relief is appropriate or necessary is left to the sound discretion of the District Court." EEOC v. Preferred Lab. LLC, 2009 WL 415429, at *4 (D. Mass. 2009) (citation omitted). That said, "a court should deny 'make whole' relief only for reasons which, if applied generally, would not frustrate [Title VII's] central statutory purposes of eradicating discrimination and making persons whole." Brown, 891 F.2d at 360 (internal quotation marks and citation omitted).

As with any request for a permanent injunction, the party seeking equitable relief must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)); EEOC v. DCP Medstream, L.P., 608 F. Supp. 2d 107, 109 (D. Me. 2009) (applying eBay factors); Yarnall v. Phila. Sch. Dist., 180 F. Supp. 3d 366, 370 (E.D. Pa. 2016) (same); Jean-Baptiste v. District of Columbia, 958 F. Supp. 2d 37, 49 n.15, 51 (D.D.C. 2013) (same); *see also* KarenKim, Inc., 698 F.3d at 100 (citing Winter, 555 U.S. at 32).

The burden of proof is on the party seeking the injunction, who must satisfy each requirement by the preponderance of the evidence. *See* Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 n.10 (11th Cir. 2007) (citing United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953)); *see also* KarenKim, Inc., 698 F.3d at 100 (quoting W. T. Grant Co., 345 U.S. at 633) ("In seeking an injunction, 'the moving party must satisfy the court that relief is needed.'"). If a jury in the same case has already decided issues common to the inquiry of whether to grant equitable relief, those findings bind the judge. *See* Troy v. Bay State Comput. Grp., Inc., 141 F.3d 378, 382-83 (1st Cir. 1998) (citations omitted); *see also* Bartee v. Michelin N.A., Inc., 374 F.3d 906, 912-13 (10th Cir. 2004) (citations omitted); Fogg v. Ashcroft, 254 F.3d 103, 110 (D.C. Cir. 2001) (citations omitted). But "**when the basis of the jury's verdict is unclear, each of the potential theories**

**supporting the verdict is open to contention.**" Miles v. Indiana, 387 F.3d 591, 600 (7th Cir. 2004) (emphasis added) (citing Russell v. Place, 94 U.S. 606, 608-09 (1876)); *cf.* Putnam Res. v. Pateman, 958 F.2d 448, 455 (1st Cir. 1992) (requiring "clarity and lack of ambiguity" when interpreting jury findings).

### III. DISCUSSION

The Court addresses each of Plaintiff's requests for equitable relief in turn.

**A.** **Request to Relocate García to the Arecibo Regional Office**

Plaintiff requests the Court transfer García from the Manatí Dispensary to the Arecibo Regional Office. (Docket No. 323 at 13). However, Plaintiff has not shown her transfer was retaliatory, and so the Court does not have authority under Title VII to grant equitable relief on that basis. Further, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015). Regardless, even if the Court had jurisdiction to return García to the Arecibo Regional Office, she fails to meet the four requirements for obtaining a permanent injunction. *See* eBay Inc., 547 U.S. at 391.

**1. Plaintiff fails to show her transfer violated Title VII**

The jury in this case found SIFC retaliated against García, but its **verdict does not specify how that retaliation occurred**. (Docket No. 318). At trial, Plaintiff argued Defendant retaliated against García in multiple ways: moving her to the Manatí Dispensary, referring complaints about her to OLR on multiple occasions, pressuring her supervisor to punish her, and crediting a false accusation that she spoke unprofessionally to a co-worker. The jury's conclusion that SIFC retaliated against García could have been based on some or all of these alleged acts. It is not clear from the verdict that the jury found García's transfer to the Manatí Dispensary to be retaliatory. *See* Miles v. Indiana, 387 F.3d at 600 (noting an unclear jury verdict is open to different theories of interpretation).

Plaintiff contends the transfer was retaliatory because SIFC's Director of Labor Relations, Gladys Gisela-Meléndez ("Meléndez"), testified the transfer took place pursuant to Article 25, Section 8, of the CBA. (Docket No. 323 at 6, 8). That provision allows for temporary placements of no longer than five days, whereas García's transfer has lasted indefinitely. Id. However, the Court is not persuaded by this argument. Meléndez said at another point in her trial testimony that **she does not know** which provision SIFC relied on for García's transfer. More

importantly, even if García's transfer to the Manatí Dispensary violated the CBA, that injury would not support a permanent injunction in this case. If Plaintiff wishes to challenge her transfer under the CBA, she may have avenues for doing so. For example, Article 25 of the CBA allows her labor union to challenge transfers with which it disagrees. But a lack of compliance with the CBA does not perforce entail retaliation under Title VII. *See* Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012) (explaining elements of Title VII discrimination claim).

García's argument that the transfer was retaliatory is further weakened by evidence of legitimate, non-retaliatory reasons for moving García to the Manatí Dispensary. An employer may challenge a prima facie case of retaliation by proffering legitimate, non-retaliatory reasons for the challenged employment action. *See* id. at 458; *see also* (Docket No. 315 at 35). If a defendant does so, the plaintiff can only prevail by showing those reasons are pretextual. Alvarado, 687 F.3d at 458. At trial, SIFC presented evidence of at least two legitimate, non-retaliatory reasons for Plaintiff's transfer. Ángel Martínez-Santiago ("Martínez"), the Executive Regional Director of SIFC's Arecibo Region and the official who gave final approval of García's transfer, testified about both.

The first non-retaliatory reason regards the need for nurses at the Manatí Dispensary. Martínez testified that leading up to and at the time of García's transfer in March of 2023, the SIFC Arecibo Region as a whole was experiencing a shortage of nurses. He explained that although both the Arecibo Regional Office and the Manatí Dispensary needed nurses, the latter had the greater need. According to Martínez, the Manatí Dispensary should normally have six to seven nurses. Shortly before García's transfer, it had only three. Martínez testified the shortage of nurses there resulted in part from retirements: two nurses retired in 2021 and another two retired in 2022 and 2023.

Plaintiff counters that Martínez' testimony about the need for nurses at the Manatí Dispensary is inaccurate because her former supervisor, Nora Rosario ("Rosario"), wrote an email in January 2023 expressing a need for nurses in the Arecibo Regional Office. (Docket No. 323 at 7). Specifically, Rosario's email asserted that two nurses from the Arecibo Regional Office that had been covering at the Manatí Dispensary were needed back at the Regional Office. However, Martínez addressed this email in his testimony. He said that Rosario's email made him feel uncomfortable because he believed there was a greater shortage of nurses at the Manatí Dispensary. He described the nursing situation there as

"chaotic" due to the small number of nurses available to support the doctors.

Given this explanation, the Court is not convinced Rosario's January 2023 email undermines Martínez' testimony that the Manatí Dispensary needed nurses. His testimony that the Manatí Dispensary needed nurses is consistent with the Arecibo Regional Office **also** needing nurses. It stands to reason that Rosario, who works as a supervisor in the Arecibo Regional Office, would request more nurses be placed at her location. Moreover, Rosario's email and testimony support Martínez' testimony that the Manatí Dispensary needed nurses to help cover its shortage and that the Arecibo Region as a whole was short on nursing staff.

The second non-retaliatory reason for Defendant's transfer presented by SIFC relates to Baerga's return to in-person work. Martínez testified that in spring of 2022, SIFC announced it was ending its COVID-19 remote-work policy. According to Martínez, Baerga was initially allowed to continue working from home. Later, however, SIFC administrators grew concerned about the possibility of an audit and worried Baerga or SIFC could be faulted for her working at home with limited supervision. Therefore, the administrators decided to return Baerga to in-person work.

Martínez testified SIFC's ability to return Baerga was complicated both by Baerga's vision impairment and the stipulated

preliminary injunction. Baerga suffers from a doctor-certified eyesight condition, which prohibits her from driving long distances and hinders her ability to drive in the dark. The ADA requires SIFC to accommodate Baerga's condition. To do so, SIFC needed to assign Baerga to the SIFC location closest to her home, which was the Arecibo Regional Office. At the same time, the preliminary injunction prohibited García and Baerga from working in the same location. Thus, according to Martínez, returning Baerga to in-person work required moving García out of the Arecibo Regional Office.

The Court credits the trial testimony of Martínez, which was corroborated by other witnesses, regarding the shortage of nurses and the need to return Baerga. Further, the Court credits Martínez' testimony that these were reasons for Plaintiff's transfer. The Court also finds Plaintiff has failed to show these legitimate, non-retaliatory reasons are pretextual. García disagrees. She argues SIFC tried to justify the transfer after the decision was already made and that it was pointless for Baerga to work in-person at the Arecibo Regional Office since her tasks could be performed remotely. (Docket No. 323 at 8). However, even if García were correct, neither argument persuades the Court that the real reason for Plaintiff's transfer was retaliation.

Because García has not shown her transfer was retaliatory in violation of Title VII, the Court has no authority to reverse her transfer. *See* 42 U.S.C. § 2000e-5(g)(1); <u>Pac. Radiation Oncology, LLC</u>, 810 F.3d at 633.

## 2. Plaintiff fails to satisfy the requirements for equitable relief

Even if the Court had jurisdiction to reverse Plaintiff's transfer, her request to be returned to the Arecibo Regional Office fails to satisfy the requirements for equitable relief.

### i. *Irreparable harm or inadequacy of legal remedies*

Plaintiff must show she "suffered an irreparable injury" and that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." <u>eBay Inc.</u>, 547 U.S. at 391. An injury entails the violation of some legal right. However, as indicated, Plaintiff has failed to establish her transfer violated Title VII. Nor has she shown it violated any other law. She therefore fails to satisfy the first two requirements for equitable relief. *Cf.* <u>Hyde v. KLS Pro. Advisors Grp., LLC</u>, 500 Fed. App'x. 24, 26 (2d Cir. 2012) (rejecting purported irreparable injury in the absence of harm to a "legally protected interest").

### ii. *Balance of harms*

García must also show that "considering the balance of hardships between the plaintiff and defendant, a remedy in equity

is warranted." eBay Inc., 547 U.S. at 391. Plaintiff testified at trial about the disadvantages of working at the Manatí Dispensary compared to working at the Arecibo Regional Office. She explained it is easier to treat patients at the Arecibo Regional Office because it has more services available. She also testified more patients come to the Arecibo Regional Office than the Manatí Dispensary, which makes working at the former more gratifying.

Even accepting García's descriptions of the hardships of working at the Manatí Dispensary, the Court finds they are outweighed by the harms to SIFC if the Court returned García to the Arecibo Regional Office. As evidenced at trial, the CBA allows SIFC to transfer employees to different locations, and Plaintiff accepted this possibility when she chose to work at SIFC. Further, the Manatí Dispensary is closer to García's home, providing her a shorter commute. By contrast, requiring SIFC to keep García permanently at the Arecibo Regional Office would hamper SIFC's ability to assign employees to where they are most needed. Indeed, Martínez testified the Manatí Dispensary currently has only four nurses, including García, but needs six to seven. As such, the Court finds the balance of hardships disfavors an injunction returning García to the Arecibo Regional Office.

iii. *Public interest*

Finally, Plaintiff must show "the public interest would not be disserved by a permanent injunction." *See* eBay Inc., 547 U.S. at 391. García argues the injunction she requests could deter future discrimination by serving as an example to SIFC or other employers. (Docket No. 323 at 4-5). However, Plaintiff has failed to establish her transfer to the Manatí Dispensary was retaliatory. Further, the public has an interest in SIFC operating efficiently. SIFC is funded by taxpayers. Employees in Puerto Rico who are injured on the job rely on SIFC for treatment. Granting Plaintiff's request to return to the Arecibo Regional Office would harm the public's interest by limiting SIFC's ability to assign employees to where they are most needed.

In short, because García fails to show her transfer violated Title VII and, regardless, cannot satisfy the four requirements for equitable relief, the Court **DENIES** her request to be returned to the Arecibo Regional Office.

B. **Request to Remove Baerga from the Arecibo Regional Office**

García requests not only that the Court return her to the Regional Office but also that the Court relocate Baerga somewhere "other than the Arecibo Regional Office." (Docket No. 323 at 13). Plaintiff's only argument for expelling Baerga is that she needs to be protected from exposure to Baerga. Id. García does **not** argue

in her *Motion* that Baerga's emotional harassment or physical threats constituted retaliation under Title VII.[2] Neither is that evident from the jury's verdict. (Docket No. 318). Thus, similar to Plaintiff's first request for equitable relief, the Court must deny it due to García's failure to show the conduct for which she seeks relief was discrimination under Title VII. *See* 42 U.S.C. § 2000e-5(g)(1); Pac. Radiation Oncology, LLC, 810 F.3d at 633.

What is more, Plaintiff's argument for why Baerga should be removed from the Arecibo Regional Office assumes García herself will also be working at that office. (Docket No. 323 at 13). However, there is no basis for this assumption since the Court will not require Plaintiff to be returned there. Consequently, the Court **DENIES** García's request to remove Baerga from the Arecibo General Office.

C. **Request to Expunge Documentation of Four Prior Incidents from García's Employee Records at SIFC**

Plaintiff requests this Court order SIFC to expunge from García's records at SIFC "any and all copies of documents" related to the following incidents:

- Humberto Deliz-Vélez' October 25, 2022, referral of García to OLR regarding the October 6-7, 2022, parking incident;

---

[2] Plaintiff asserts elsewhere that Baerga concocted a false complaint against her, (Docket No. 323 at 10-11), but García does not suggest physical separation from Baerga would prevent Baerga from lodging false complaints.

- Roberto Rosado-González' complaint and addendum of July 14 and 15, 2020, alleging García improperly confronted him about his facemask and made derogatory comments about his sexual orientation;

- Jorge Ramos-Cuevas' interaction with García in the emergency room on July 14, 2020; and

- Albert Vargas' interaction with García regarding COVID-19 protocol on July 3, 2020.

(Docket No. 323 at 13-14).

García argues these incidents were part of the evidence that led the jury to find SIFC retaliated against her. *Id.* at 12. Even if that were true, the Court finds Plaintiff has not shown such retaliation caused her irreparable injury for which money damages are inadequate. *See* eBay Inc., 547 U.S. at 391. Nor has she established she will suffer irreparable and non-compensable harm in the future. *See* Glob. NAPs, Inc. v. Verizon New Eng., Inc., 706 F.3d 8, 13 (1st Cir. 2013) (reasoning a court has the discretion to issue an injunction "if it concludes '(1) that [a party] has suffered' -- or, as here, **will suffer** -- 'an irreparable injury'") (alteration in original) (citations omitted) (emphasis added)).

**1. Past harm**

Plaintiff has not shown the injuries she suffered as a result of SIFC's retaliation are irreparable or non-compensable with money damages. Her testimony at trial regarding damages was short

and conclusory. She testified about: (a) feeling very bad; (b) feeling very sad; (c) feeling very disillusioned with her work; (d) feeling she had lost prestige as a person and as a health professional; (e) feeling constant fear of losing her job and of how that could affect her ability to provide for her family; and (f) feeling she had lost many years of service, dedication, and effort in her job.

Plaintiff provided no other details regarding damages. While she called a psychologist as an expert, that witness, Dr. Carol Romey ("Dr. Romey"), did not testify about damages. Rather, the expert testimony focused on Plaintiff's ability to perceive events around her. Notably, Dr. Romey concluded Plaintiff was "normal" and not experiencing any pathologies. Dr. Romey also testified that García did not exhibit any signs of an anxiety or depressive disorder.

Having considered the evidence regarding Plaintiff's damages, the Court concludes the four incidents at issue here did not cause Plaintiff irreparable injury or injury that money damages cannot compensate. The $200,000 awarded by the jury is adequate compensation for the injuries about which Plaintiff testified. *See* (Docket No. 318). Therefore, Plaintiff fails to satisfy the first two requirements for a permanent injunction as they relate to any past retaliatory injuries from these four incidents.

**2. Future harm**

As to future harm, Plaintiff's arguments also fall short. She contends expungement is warranted because of the "potential for the information in the file at the Office of Labor Relations being considered in the future while contemplating the application of disciplinary measures against [her]." (Docket No. 323 at 11). García does not assert anything more than the "potential" of future retaliation. Id. Nor does she cite to any evidence to support her assertion, which SIFC denies. (Docket Nos. 323 at 11 and 325 at 8-10).

More importantly, Plaintiff's suggestion that OLR might use one or more of these four incidents as grounds for future discipline goes against the evidence presented at trial. That evidence shows OLR responded to each of the four incidents in favor of García, without taking action against her.

First, after the then-Acting Regional Executive Director of Arecibo Humberto Deliz-Vélez ("Deliz") referred García to OLR regarding the October 6-7, 2022, parking incident, the SIFC Director of Labor Relations, Meléndez, responded by letter. She explained that OLR had concluded the incident had been handled already by García's supervisor, Rosario. Meléndez also called on the Arecibo Regional Executive Director to follow SIFC protocol before referring future matters to OLR.

Second, after a SIFC employee named Roberto Rosado-González ("Rosado") accused García of making homophobic remarks during an incident that occurred on July 14, 2020, OLR conducted an investigation. Meléndez wrote to García to explain that OLR concluded García properly confronted Rosado about his improper use of a facemask but that García should have done so in a professional and respectful tone. Meléndez also stated no witness could corroborate the accusation that García made homophobic remarks against Rosado.

Third, after the then-Regional Executive Director of Arecibo Magalis Soto-Pagán ("Soto") contacted OLR about García's July 14, 2020, interaction with SIFC employee Jorge Ramos-Cuevas ("Cuevas") in the emergency room of the Arecibo Regional Office, OLR documented the incident. Labor Relations Officer Carlos R. Ríos-Rivera ("Ríos") wrote that OLR concluded the situation had been handled internally, never should have been referred to OLR, and could not be used to establish a pattern of behavior by García.

Fourth, after Soto contacted García's then-supervisor, Rosario, to request that Rosario discipline García following an incident with SIFC employee Albert Vargas ("Vargas") regarding COVID-19 protocol, OLR became aware of the incident. Ríos wrote that OLR concluded the situation had been properly handled at the supervisor level by Rosario.

In each of these four incidents, OLR took no disciplinary action against García, much less rely on previous complaints to do so. To the contrary, Ríos explicitly stated the incident regarding Cuevas could not be used to establish a pattern of behavior against Plaintiff. Thus, the Court finds it unlikely OLR will use documentation of these four incidents to discipline García in the future. Further, expunging records would do nothing to prevent Deliz, Soto, Rosado, or any other SIFC employee from complaining about or attempting to refer García to OLR in the future. Finally, nothing about Soto's alleged attempts to pressure Rosario into punishing García after the Vargas incident suggests Soto relied on documentation of past complaints to do so. Consequently, Plaintiff fails to show she will suffer future irreparable, non-compensable harm that would justify expunging documentation of these four incidents.

Because Plaintiff has failed to establish the first two requirements for a permanent injunction with regards to her request for expungement, the Court need not address the latter two. Plaintiff's request for expungement is **DENIED**.

D. **Request for a Cease-and-Desist Order**

Plaintiff next asks the Court to order that SIFC "cease and desist of any further act of retaliation against Ms. García while she is performing her duties as General Nurse IV in the Arecibo

Regional Office." (Docket No. 323 at 13). As a preliminary matter, Plaintiff's request is defective since she does not articulate what future retaliation is likely to occur that would justify this order. She therefore fails to show an irreparable injury. *See* eBay Inc., 547 U.S. at 391.

Moreover, Plaintiff does not specify what particular conduct she wants the Court to prohibit. Nor did the jury in this case identify which of Defendant's actions constituted retaliation. The Supreme Court has explained injunctions should be clear enough "so that those who must obey them will know what the court intends to require and what it means to forbid." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70, 415 U.S. 423, 444 (1974) (internal quotation marks and citation omitted). Applying that guidance here, the Court concludes an order not to retaliate would be too vague to put SIFC on notice as to what conduct is prohibited. *See* Pierce v. City of Phila., 391 F. Supp. 3d 419, 445-46 (E.D. Pa. 2019) (declining to enjoin employer from retaliating against plaintiff that had succeeded at trial on her hostile work environment claim); Calvin Klein Cosms. Corp. v. Parfums de Coeur, Ltd., 824 F.2d 665, 669 (8th Cir. 1987) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged . . . ."). Therefore, Plaintiff's request for a cease-and-desist order is **DENIED**.

**E. Request to Disseminate and Explain Permanent Injunction**

Plaintiff's last request is that the Court explain the requested permanent injunction to various SIFC personnel. (Docket No. 323 at 13). However, because the Court has denied Plaintiff's other requests for equitable relief, this request is **DENIED** as moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Permanent Injunctive Relief* at Docket No. 323 is **DENIED** in its entirety.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of July 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE