**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

KEILA GARCÍA-COLÓN,

     **Plaintiff,**

        v.

CORPORATION OF THE STATE
INSURANCE FUND,

     **Defendant.**

**CIVIL NO. 21-1211 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

     Pending before the Court is Plaintiff Keila García-Colón's ("Ms. García" or "Plaintiff") *Motion for Attorneys' Fees and Litigation Expenses* ("*Motion*"). (Docket No. 365). For the reasons set forth below, the *Motion* is **GRANTED IN PART** and **DENIED IN PART**.

### I.   PROCEDURAL BACKGROUND

     In May 2021, Ms. García brought suit against her employer, the Corporation of the State Insurance Fund ("CSIF" or "Defendant"), for alleged sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a and 1988; Puerto Rico Law No. 17 of April 22, 1988, P.R. Laws Ann. 29 §§ 155 *et. seq.*; Puerto Rico Law No. 69 of July 6, 1985, P.R. Laws Ann. 29 §§ 1321 *et. seq.* and Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. 29 §§ 194, *et seq.*

(Docket Nos. 1; 342; 365 and 389). Plaintiff sought equitable and injunctive relief, compensatory damages, punitive damages, costs, pre-judgment interests, and reasonable attorneys' fees. (Docket No. 1 ¶ 1). After Defendant filed its *Motion for Summary Judgment*, Ms. García withdrew her sexual harassment claim and proceeded to jury trial as to her retaliation claims. (Docket Nos. 197 at 26 and 389 at 2).

On May 20, 2024, the jury returned a verdict in favor of Ms. García on the retaliation claims under federal and Puerto Rican law.[1] (Docket Nos. 318 and 365 at 1). Although Plaintiff was initially awarded $200,000 in compensatory damages, this was doubled under Puerto Rican law and then reduced to $300,000 due to federal and Puerto Rican caps on damages awards. (Docket No. 342 at 1-2). On July 15, 2024, the Court entered the *Judgment*, which was finalized on August 14, 2024, after CSIF declined to appeal. (Docket Nos. 342 at 2 and 365 at 2). The Court also denied Plaintiff's *Motion for Permanent Injunctive Relief* on July 15, 2024. (Docket No. 339). Plaintiff timely filed a *Notice of Appeal* over this denial on August 7, 2024. (Docket No. 352).

Plaintiff filed the present *Motion* on August 28, 2024, seeking reimbursement for attorneys' fees and litigation expenses under 42 U.S.C. § 1988 ("§ 1988"). (Docket No. 365). As the *Judgment* has

---

[1] Specifically, under Title VII and Puerto Rico Law No. 115 of December 20, 1991. (Docket No. 342 at 1).

been finalized, Plaintiff is a "prevailing party" who may seek attorneys' fees and costs under § 1988(b). (Docket Nos. 352 and 365 at 2). Plaintiff then filed the *Supplemental Motion for Attorneys' Fees and Litigation Expenses*, bringing Plaintiff's requested award of $380,100.00 in attorneys' fees and $4,312.90 in litigation expenses, totaling $384,412.90. (Docket No. 366 at 2). Defendant filed its *Response* on September 9, 2024. (Docket No. 389). Plaintiff sought leave to file a reply to Defendant, which was granted on October 7, 2024. (Docket Nos. 393-1 and 400). Defendant subsequently filed a *Sur-Reply* on October 18, 2024. (Docket No. 409).

Plaintiff argues she is entitled to recover attorneys' fees and litigation expenses for the "translation of documents…, messengers, mailing costs, and other miscellaneous expenses, including photocopies." (Docket No. 365 at 3). Plaintiff justifies the amount requested through the three-year period required to litigate her claims, the resultant delay in payment to her attorneys, and the significant professional and educational accomplishments of her attorneys. Id. at 3, 14-15.

Defendant finds it unreasonable for Plaintiff to seek an amount of attorneys' fees and litigation costs in excess of the compensatory damages awarded. Id. at 3. Defendant argues that Plaintiff only prevailed on one set of claims, various time entries are too vague to justify the time expended by Plaintiff's

attorneys, and multiple time entries are unnecessary or duplicative. Id. at 15-19. Defendant advocates for a reduced award of $100,000.00, mirroring contingency fee limits applicable to the Commonwealth of Puerto Rico. *See* id.

## II.  LEGAL BACKGROUND

This Court applies federal law when a plaintiff's complaint is based on a right conferred under federal law, as is the case here. *See* Templeton Bd. of Sewer Comm'rs. v. Am. Tissue Mills of Mass., Inc., 352 F.3d 33, 36 (1st Cir. 2003) (citation omitted); 28 U.S.C. § 1331 (district courts hold federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"); 28 U.S.C. § 1343(a); (Docket No. 1 at 2). A district court holding federal question jurisdiction over one claim may assert supplemental jurisdiction over related state-law claims that arise from "the same nucleus of operative facts." BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 833 (1st Cir. 1997); *see* 28 U.S.C. § 1367(a).

Section 1988 allows a district court to use its discretion to award "reasonable attorney's fee as part of the costs" to a "prevailing party" under § 1988(b). *See* King v. Greenblatt, 560 F.2d 1024, 1026 (1st Cir. 1977) (quoting 42 U.S.C. § 1988); Civil Rights Attorney's Fees Award Act of 1976, Pub. L. No. 94-559, 90 Stat. 2641. A "reasonable" fee is one that is "sufficient to induce

a capable attorney to undertake the representation of a meritorious civil rights case" without producing "windfalls." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) (citation omitted).

A plaintiff is a "prevailing party" under § 1988 "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (citation omitted)). A plaintiff may lose on some claims but still collect attorney's fees. See Richardson v. Miller, 279 F.3d 1, 3 (1st Cir. 2002). Eligible plaintiffs include those bringing claims under Title VII. See 42 U.S.C. § 1988(b). Plaintiffs bear the burden of "establishing entitlement to an award." Fox v. Vice, 563 U.S. 826, 838 (2011).

Although the text of § 1988(b) states that a court "may" use its discretion to award reasonable attorney's fees and costs, a prevailing party should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989) (citation omitted); see also Bos. Child. First v. City of Bos., 395 U.S. 10, 14 (1st Cir. 2005) (the award of attorneys' fees and costs under § 1988 is "virtually obligatory") (citation omitted); Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001); Casco, Inc. v. John Deere Constr. & Forestry Co., 596 F.Supp.3d 359, 371 (D.P.R. 2022). However, a district court retains

"extremely broad" discretion when determining the extent and amount of a fee award. Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).

A party may be awarded attorney's fees and costs under § 1988 while an appeal from a final judgment on the merits is pending. See White v. N.H. Dept. of Emp. Sec., 455 U.S. 445, 454 (1982) (promptly hearing and deciding claims to attorney's fees avoids piecemeal appeals because appeals from fee awards and from a final judgment on the merits can be considered together).

### III. DISCUSSION

The Court begins by determining an appropriate amount of attorneys' fees before addressing the reasonableness of Plaintiff's requested costs.

### A. <u>Reasonable Attorneys' Fees</u>

Plaintiff requests $380,100.00 in attorneys' fees for the work of four attorneys: Juan Rafael González-Muñoz ("Mr. González"), at González Muñoz Law Offices, PSC, and Casillas, Santiago & Torres, LLC ("CST"); José Luis Rivero-Vergne (Mr. Rivero") at Rivero-Vergne Law Offices; and Natalia Del Nido-Rodríguez ("Ms. Del Nido") and Juan Nieves-González ("Mr. Nieves") at CST. (Docket Nos. 365-3 at 6-8; 365-5 at 2-3; 365-7 at 2; 366 at 2 and 366-2 at 1). In support of her request, Plaintiff submitted copies of invoices and statements from each attorney certifying the contents of the invoices and summarizing his or her

professional qualifications. (Docket Nos. 365-1; 365-2; 365-5; 365-6; 365-7; 365-8; 366-1 and 366-2).

The lodestar method is the predominant method of calculating reasonable attorney's fees. *See*, *e.g.*, Perdue, 559 U.S. at 551 (lodestar is the "guiding light" for fee-shifting jurisprudence) (citation omitted); Bogan v. City of Bos., 489 F.3d 417, 426 (1st Cir. 2007) (lodestar should "generally" be used for § 1988 purposes); Gay Officers Action League, 247 F.3d at 295; Lipsett, 975 F.2d at 937 (lodestar is the "starting point" when calculating fees); City of Riverside v. Rivera, 477 U.S. 561, 568 (1986).

The lodestar method requires two steps. First, a court must determine "the number of hours reasonably expended." Pérez-Sosa v. Garland, 22 F.4th 312, 321 (1st Cir. 2022) (citations omitted). Second, the court should "identify a reasonable hourly rate or rates." Id. (citation omitted). Multiplying the reasonable number of hours by the reasonable rate results in a lodestar, or a presumptively reasonable fee award. *See* Lipsett, 975 F.2d at 937 (citation omitted). The Court may then make upward or downward adjustments to account for special circumstances. *See* Pérez-Sosa, 22 F.4th at 321 (citations omitted).

Throughout this calculation, the task of a district court "is to do rough justice, not to achieve auditing perfection." Id. at 322 (citation omitted). Courts "may take into account their overall

sense of a suit[] and may use estimates in calculating and allocating an attorney's time." Id. (citation omitted).

### 1. Number of Hours Reasonably Expended

##### i. Discounting and excluding excessive, redundant, or unnecessary hours

To determine the number of hours reasonably expended by the attorneys for the prevailing party, a court excludes or discounts "those hours that are 'excessive, redundant, or otherwise unnecessary.'" Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Emps. et al. v. Ray Haluch Gravel Co. et al., 745 F.3d 1, 5 (1st Cir. 2014) (quoting Hensley, 461 U.S. at 434); see also Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984) (hours that are "duplicative, unproductive, excessive, or otherwise unnecessary" should be discounted) (citations omitted).

Time records that are "too generic" and "insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like" should be discounted or disallowed by a district court. Pérez-Sosa, 22 F.4th at 330 (quoting Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008)). The First Circuit has held that hours categorized with vague titles such as "Meeting with Client" or "Telephone Conference [with] Client" may be discounted under this standard. See id. at 329. Additionally, while duplicative entries should be discounted, "time spent by two attorneys on the same general task"

is not automatically duplicative because "careful preparation often requires collaboration and rehearsal" between parties and their attorneys. Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998).

After reviewing the invoices submitted by Plaintiff, the Court concludes that some of the hours for which Plaintiff seeks fees should be discounted. The invoices submitted by Mr. González and Mr. Rivero contained entries that are too generic for the Court to assess whether the time spent on a given task was appropriate. While the Court does not doubt that these entries represent time spent working on this case, their lack of detail prevents the Court from exercising its duty to evaluate whether the time spent was reasonable. See Pérez-Sosa, 22 F.4th at 329-30.

The problematic time entries are organized by attorney below. An asterisk (*) notes a task description that is one of multiple entries for the same block of time. No problematic entries involved in-court hours, so each time entry reflects out-of-court billing.

Juan Rafael González-Muñoz (Docket No. 365-2):

| Date: | Task Description: | Time: |
|---|---|---|
| 5/3/21 | Telephone conference with KGC.* | 3.40 |
| 6/1/21 | Telephone conference with KGC.* | 8.30 |
| 6/24/21 | Review email from P. Miller, Esq.* | 0.90 |
| 8/25/21 | Review email from defendant.* | 0.60 |
| 9/16/21 | Review P. Miller's email.* | 2.20 |
| 9/20/21 | Telephone conference with KGC.* | 0.60 |
| 9/24/21 | Review email from M. Ocasio Arana. | 0.10 |
| 11/8/21 | Draft email to defendant.* | 4.70 |
| 12/1/21 | Telephone conference with KGC.* | 0.50 |
| 9/15/22 | Telephone conference with KGC. | 0.20 |

| 9/30/22 | Draft email to C. Tacoronte; Telephone conference w/ C. Tacoronte.* | 1.10 |
|---------|---------------------------------------------------------------------|------|
| 10/11/22 | Telephone conference with KGC (2). | 0.40 |
| 10/11/22 | Review and respond to various messages from KGC. | 0.20 |
| 10/19/22 | Telephone conference with KGC (2). | 0.30 |
| 11/7/22 | Telephone conference with KGC (3). | 0.50 |
| 1/23/23 | Draft letter to attorneys.* | 2.70 |
| 2/17/23 | Telephone conference with K. García (2).* | 0.50 |
| 3/4/23 | Telephone conference with KGC.* | 1.10 |
| 3/6/23 | Telephone conference with KGC; telephone conference with P. Miller.* | 0.80 |
| 3/10/23 | Telephone conference with K. García.* | 2.10 |
| 4/14/23 | K. Garcia; and P. Miller/N. Rosario.* | 1.40 |
| 5/2/23 | Draft email to C. Romey.* | 0.50 |
| 5/26/23 | Review email from KGC, search for information requested and draft response. | 0.20 |
| 6/16/23 | Telephone conference with P. Miller.* | 7.70 |
| 7/10/23 | Telephone conference with KGC.* | 2.60 |
| 10/10/23 | Telephone conference with JLRV. | 0.10 |
| 4/2/24 | Email to KGC.* | 6.10 |
| 5/1/24 | Meeting with E. Sierra; telephone conference with N. Rosario.* | 13.10 |
| 5/4/24 | Meeting with N. Del Nido and Carol Romey.* | 7.30 |
| 6/13/24 | Telephone conference with K. García.* | 0.30 |
| 7/30/24 | Exchange of emails with Tracy Binder FOCR.* | 0.70 |
| **Total:** | **71.20** | |

José Luis Rivero-Vergne (Docket No. 366-2):

| Date: | Task Description: | Time: |
|-------|-------------------|-------|
| 10/10/23 | Telephone conference with Attorney González Muñoz. | 0.10 |
| 11/15/23 | Telephone conference with Attorney González Muñoz and Keila García. | 0.40 |
| **Total:** | **0.50** | |

Most of the problematic entries were recorded by Mr. González, who performed the vast majority of work on this case. (Docket Nos. 365 at 18 and 366-2). Twenty-three time entries submitted by Mr. González are individual task descriptions block-billed alongside

multiple task descriptions in a single time entry. (Docket No.
365-2). Because the vague entries are block-billed alongside one
to eight appropriate task descriptions in a single time entry, the
Court will simply reduce each block-billed entry by **twenty percent**
overall, for a reduction of **13.84 hours** from Mr. González's time.
*See* <u>Torres-Rivera</u>, 524 F.3d at 336 (courts may discount or disallow
generically recorded hours); <u>Carrero</u>, 2024 WL 3042748 at *5
(reducing one hour by one-third when a vague time entry was "one
of three task descriptions for a single hour").

Eight of Mr. González's problematic time entries consisted of
a single task description and will be reduced by **thirty percent**,
for a reduction of **0.60 hours** from Mr. González's time.[2] *See* <u>Pérez-</u>
<u>Sosa</u>, 22 F.4th at 329 (discounting "impermissibly vague" time
entries by thirty percent); <u>Carrero</u>, 2024 WL 3042748 at *5 (thirty
percent reduction is appropriate for hours that are overly vague);
<u>Conforti v. Berryhill</u>, 2021 WL 796494, at *3 (S.D.N.Y. Mar. 2,
2021) (a "twenty to thirty percent" reduction in fee awards because
of inadequate time records is typical).

In total, the Court will reduce Mr. González's time by a total
of **14.44 hours**. Additionally, to adjust for the lack of detail in
the above entries provided by Mr. Rivero, the Court will reduce
them by **thirty percent**, for a reduction of **0.15 hours** from Mr.

---

[2] The relevant entries are those on 9/24/21; 9/15/22; 10/11/22 (2 entries);
10/19/22; 11/7/22; 5/26/23 and 10/10/23.

Rivero's time. *See* Pérez-Sosa, 22 F.4th at 329; Carrero, 2024 WL
3042748 at *5.

    *ii.  Other grounds for discounting and excluding hours*

Defendant briefly raises various other grounds under which
the reasonable number of hours expended could be adjusted. (Docket
No. 389 at 4-5). First, Defendant argues that Plaintiff took
unnecessary and duplicative depositions of Defendant's employees,
who appeared friendly to Plaintiff and hostile towards CSIF.
(Docket No. 389 at 19-20). Defendant claims Plaintiff's attorneys
should have taken sworn statements instead of deposing the
witnesses. Id. at 19. However, Defendant provides no legal
authority that supports excluding the related time entries for
this reason. Id.; L. CV. R. 7(a) (motions must contain citations
to supporting authorities). Additionally, the amount of time spent
preparing for and conducting the depositions (less than eight hours
per witness) is reasonable, especially as the depositions involved
travel to Arecibo. Id. at 20. *See also*, Casco, Inc., 596 F.Supp.3d
at 375-76 (refusing to discount billing for roughly twenty-six
hours spent preparing for, conducting, and reviewing four
depositions). Due to the lack of support for Defendant's assertion,
the Court will not discount time entries relating to Plaintiff's
depositions.

Defendant also notes that hours involving clerical tasks and
duplicative work should be excluded from the reasonable number of

hours. (Docket No. 389 at 4); *see* <u>Grendel's Den, Inc.</u>, 749 F.2d at 950; <u>Cortes-Reyes v. Salas-Quintana</u>, 806 F.Supp.2d 470, 476 (D.P.R. 2011) (clerical tasks "cannot be billed at an attorney's rate"). However, Defendant does not identify any entries that are clerical in nature, and no clearly clerical tasks are listed on Plaintiff's invoices. (Docket Nos. 365-2; 365-6; 365-8; 366-2 and 389). Only a small number of hours on Plaintiff's invoices shows close collaboration or overlap between Plaintiff's attorneys, and these entries do not appear duplicative or unnecessary in nature. <u>Id.</u> No hours are excluded under these grounds.

Finally, Defendant also argues that Mr. Rivero and Mr. Nieves should not be compensated for their work on the present case, as Mr. Rivero has withdrawn from Plaintiff's case and Mr. Nieves never made an appearance in court. (Docket No. 389 at 12). The Court does not find, and Defendant does not provide, any legal authority supporting the idea that an attorney cannot be compensated for their time because they did not spend that time in court. The same is true for Defendant's argument that withdrawing from a case forfeits the right to future repayment for time already spent on the case. Without more, the Court will not deny compensation to Mr. Rivero and Mr. Nieves. *See* L. CV. R. 7(a)-(b); *see also* (Docket No. 393-1 at 7-8).

### 2.   Reasonable Hourly Rates

"[T]he reasonable hourly rate in any given case 'will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria.'" Pérez-Sosa, 22 F.4th at 325 (citation omitted). The appropriate rate is usually "that prevailing in the community for similar work" done by "lawyers of like qualifications, experience, and competence." Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983) (citation omitted); Pérez-Sosa, 22 F.4th at 321 (citation omitted). "Most often, there is not a single reasonable rate for legal services but, rather, a range of reasonable rates." Id. at 326 (citation omitted).

A court may assign different rates to time spent in-court and out-of-court, with in-court time carrying a higher hourly rate than out-of-court time. See, e.g., Guillemard-Ginorio v. Contreras, 605 F.Supp.2d 301, 311-12 (D.P.R. 2009) (citations omitted). Rates for time spent drafting fee petitions are "often calculated at lower rates than those deemed reasonable for the main litigation." Torres-Rivera, 524 F.3d at 340 (justifying a lower fee because fee petitions are "uncomplicated exercise[s]"); see also Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993) (reduced rate for fee petitions is appropriate because "time spent in this exercise often amounts to little more than 'documenting what a lawyer did and why he or she did it'") (citation omitted).

   To determine reasonable rates in this case, the Court
considers the parties' briefing on this issue, as well as examples
of fee awards from other cases in this district and the First
Circuit. The Court also relies on its own understanding of
prevailing rates in Puerto Rico and its knowledge of this
particular case, over which the Court has presided since it began.
*See* Pérez-Sosa, 22 F.4th at 326-27, n.5 (citations omitted).

   In the District of Puerto Rico, an approximate range of
typical rates for **highly experienced attorneys** is **$250-300** and for
**associates $150-200**. *See* Skytec, Inc. v. Logistic Sys., Inc., 2019
WL 1271459, at *5 (D.P.R. Mar. 15, 2019), *amended on
reconsideration*, 2019 WL 2246775 (citations omitted); Bd. of Trs.
v. ILA Loc. 1740, AFL-CIO, 2022 WL 4591843, at *3 (D.P.R. Sept.
30, 2022) (citation omitted); Arelene Ocasio v. Comisión Estatal
de Elecciones, 2023 WL 8889653, at *3 n.5 (D.P.R. Dec. 26, 2023)
(citations omitted). However, courts sometimes award fees at
higher rates. *See*, *e.g.*, Rivera-Molina v. Casa La Roca, LLC, 2022
WL 897145, at *1 (D.P.R. Mar. 25, 2022) (hourly rate of $350 is
appropriate); Carrero v. Molina Healthcare of P.R., Inc., 2024 WL
3042748, at *6 (D.P.R. June 18, 2024) (awarding an hourly rate of
$350 to law firm partners with two decades of experience).

   In this case, Plaintiff's attorneys all have significant
civil litigation experience and come from well-respected Puerto
Rican law firms. Mr. González and Mr. Rivero both have decades of

civil litigation experience, including time spent litigating employment discrimination cases in federal court. (Docket Nos. 365-1 ¶¶ 5-11 and 366-1 ¶¶ 5-7, 9). Both of the CST junior partners have federal civil litigation experience. (Docket Nos. 365-5 ¶¶ 5-8 and 365-7 ¶¶ 9-12).

Over the last three years, both parties have undertaken a substantial amount of legal work relating to this case. Among other tasks, Plaintiff's attorneys prepared a complaint; engaged in discovery proceedings including taking depositions, preparing their witnesses for depositions, and drafting and opposing motions to compel; opposed a motion for summary judgment; and defended Plaintiff's claims at trial. (Docket Nos. 1; 365-1 ¶¶ 26-27 and 365-2 at 13).

Considering the capabilities and experience of Plaintiff's counsel, as well as the discovery and motion practice that it completed, the Court finds that reasonable rates for the legal work performed by Plaintiff's counsel reach the higher end of the legal rates typically charged in this district. Taking all of this into consideration, as well as each individual attorney's specific qualifications described below, the Court concludes that the following rates are reasonable and appropriate in this case.[3]

---

[3] The Court relies on the positions and years of experience that were represented by Plaintiff to be current as of the time of briefing.

First, **Juan Rafael González-Muñoz,** is the lead attorney on this case at González Muñoz Law Offices, PSC, and CST. (Docket Nos. 365 at 19 and 365-3 at 6-8). Mr. González has almost four decades of experience in civil rights litigation in the District of Puerto Rico and before the First Circuit. (Docket No. 365-1 ¶¶ 5-11). The Court accepts his requested hourly rates of **$320** for out-of-court time and **$335** for in-court time as reasonable and sets a reduced hourly rate of **$200** for time spent drafting the fee petition. Id. ¶ 36.

Next, **José Luis Rivero-Vergne** is an attorney at Rivero-Vergne Law Offices. (Docket No. 366-2). Like Mr. González, Mr. Rivero has almost four decades of civil litigation experience in the District of Puerto Rico and before the First Circuit. (Docket No. 366-1 ¶¶ 5-7, 9). The Court accepts his requested hourly rate of **$280** for out-of-court time as reasonable. Id. ¶ 9.

Ms. Del Nido and Mr. González are both junior partners at CST. (Docket Nos. 365-7 ¶ 9 and 365-5 ¶ 7). **Natalia Del Nido-Rodríguez** has almost eight years of experience as an attorney and spent four years as a judicial law clerk in the District of Puerto Rico. (Docket No. 365-7 ¶¶ 6-7, 9). The Court accepts her requested hourly rates of **$195** for out-of-court time and **$210** for in-court time as reasonable. Id. ¶ 18.

**Juan Nieves González** has eleven years of civil litigation experience. (Docket No. 365-5 ¶ ¶ 5-7). The Court accepts his requested hourly rate of **$195** as reasonable. Id. at ¶ 13.

Having determined a reasonable number of hours expended and reasonable hourly rates, the Court reaches its initial lodestar amount as follows:

| Timekeeper: | Position: | Hours: | Hourly Rate: | Fee: |
|---|---|---|---|---|
| Juan Rafael González Muñoz | Lead attorney | 912.76 | $320 (out-of-court) | $292,083.20 |
| | | 95.80 | $335 (in-court) | $32,093.00 |
| | | 30.80 | $200 (fee petition) | $6,160.00 |
| | | | Total: | $330,336.20 |
| José Luis Rivero Vergne | Attorney | 32.75 | $280 (out-of-court) | $9,170.00 |
| | | | Total: | $9,170.00 |
| Natalia Del Nido Rodríguez | Junior partner | 55.90 | $195 (out-of-court) | $10,900.50 |
| | | 89.60 | $210 (in-court) | $18,816.00 |
| | | | Total: | $29,716.50 |
| Juan Nieves González | Junior partner | 12.50 | $195 | $2,437.50 |
| | | | Total: | $2,437.50 |
| | | | | |
| **Total:** | | **$371,660.20** | | |

### 3. Adjusting the Lodestar Amount

An initial lodestar calculation may be adjusted upwards or downwards based on additional circumstances at play, such as when a prevailing plaintiff "succeeded only on some of his claims for relief." Hensley, 461 U.S. at 434. The adjustment of a lodestar amount is especially appropriate in complex civil rights cases where a prevailing plaintiff may have achieved a wide range of

possible successes. See id. at 436. In these situations, a court must ask: (i) whether the plaintiff failed to prevail on claims unrelated to those on which he succeeded, and (ii) whether the plaintiff achieved a level of success that made the hours reasonably expended a "satisfactory basis" for a fee award. Id. at 434.

> ### i.   Relatedness of Plaintiff's successful retaliation and unsuccessful sexual harassment claims

A court can deny attorney's fees for unsuccessful claims unrelated to the ultimate result achieved by a plaintiff. See id. at 435 (citation omitted); Fox, 563 U.S. at 834 (no fee award for work on claims unrelated to the grant of relief); Michel-Ramos v. Arroyo-Santiago, 493 F.Supp.2d 249, 254 (D.P.R. 2007) (reducing fee award when plaintiff did not prevail on all claims). However, when a plaintiff raises multiple claims involving a "common core of facts" or "based on related legal theories," it is difficult to determine which hours were spent on which claim. Hensley, 461 U.S. at 435; Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997) (citing Hensley, 461 U.S. at 435). When this happens, a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. The court can then use its discretion to eliminate specific hours or "reduce the award to account for the limited success." Id. at 436-37.

Plaintiff voluntarily dismissed her sexual harassment claims at the summary judgment stage to proceed with – and ultimately prevail on - her retaliation claims. (Docket Nos. 1 ¶ 4 and 197 at 4 n.2). Plaintiff's *Complaint* shows Ms. García felt both claims were connected, with her decision to report purported sexual harassment resulting in retaliation from CSIF employees. (Docket Nos. 1 ¶ 84 (Plaintiff felt "cumulative pressure" from purported sexual harassment and retaliatory practices by Defendant) and 197 at 7).

Although the events leading to the sexual harassment claims came before those supporting the retaliation claims, Plaintiff's claims had sufficient factual connections as to be considered related. *See* Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1175-76, 1179 (2d Cir. 1996) (unsuccessful sex discrimination claim dismissed at the summary judgment stage was sufficiently related to plaintiff's successful retaliation claim for an award of attorney's fees when plaintiff was fired after complaining about a co-worker's sexual comment); Parrish v. Solecito, 280 F.Supp.2d 145, 172 (S.D.N.Y. 2003) (while facts of an unsuccessful sexual harassment claim preceded those of a successful retaliation claim, plaintiff's counsel "necessarily had to address the underlying sexual harassment" to succeed on the retaliation claim. Both claims were "sufficiently related" to avoid decreasing an award of attorneys' fees.); Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d

848, 859 (1st Cir. 1998). *Cf* Burke v. McDonald, 572 F.3d 51, 63 (1st Cir. 2009) (distinguishing successful claim from those made against other defendants or under different legal theories).

Additionally, Plaintiff's invoices reveal multiple entries that could relate to either the sexual harassment or retaliation claims, particularly entries logged during the discovery process. (Docket Nos. 365-2 at 10, 20, 23-24 and 365-6). Plaintiff's attorneys' decision to lump the claims together when billing time indicates some commonality of facts and legal theories. *See* Hensley, 461 U.S. at 435; Fox, 563 U.S. at 834; (Docket No. 393-1 at 5). Had Plaintiff only brought her retaliation claims, it is likely that her attorneys still would "have conducted similar fact-gathering activities," such as depositions and document requests. Fox, 563 U.S. at 839. Defendant also sought dismissal of Plaintiff's entire *Complaint* through summary judgment, so the summary judgment motion, statement of uncontested facts, and plaintiff's motion in opposition "dealt with all the uncontroverted and material issues of fact regarding the totality of plaintiff's claims[,]" further suggesting Plaintiffs' claims are related.[4] Morales-Diaz, 2014 WL 12889342 at *4; *see* (Docket Nos. 184; 185 and 197).

---

[4] Defendant admits that there "might be some interrelationships with the evidence from the sexual harassment claim and the retaliation claim" (Docket No. 409 at 7).

The Court finds that while Plaintiff's sexual harassment and retaliation claims had different outcomes, they are sufficiently related under Hensley. 461 U.S. at 435. Plaintiff's invoices show both sets of claims considered together during the pre-trial period, and Plaintiff herself appeared to consider the claims as sharing a factual background. (Docket Nos. 1 ¶ 84 and 365-2). As a result, separating the hours spent on Plaintiff's unsuccessful sexual harassment claims is not appropriate. Because Plaintiff's claims are closely related, the Court turns to Plaintiff's level of success on her claims.

> ii. *Plaintiff's level of success*

Fee awards may be reduced if a court finds the "significance of the overall relief obtained by the plaintiff" to be disproportionate to the "hours reasonably expended on litigation." Hensley, 461 U.S. at 435; Grendel's Den, Inc., 749 F.2d 957 (fee award based, in part, to degree of counsel's success). This is true even when a plaintiff's claims were "interrelated, nonfrivolous, and raised in good faith" as the most important factor is "the degree of success obtained." Hensley, 461 U.S. at 436. A court must use its discretion when making these deductions as there is no clear rule as to how attorneys' fees should be reduced. Id. at 436-47.

The First Circuit has named three types of success that can be factored into a fee-reduction calculus: plaintiff's success

claim by claim, the relief actually obtained, or the societal importance of the right that has vindicated. *See* Coutin, 124 F.3d at 338 (emphasizing the role of societal importance). A plaintiff who has limited success on a claim-by-claim basis but "obtains substantial compensation or other important relief" will usually "fare much better in fee wars, even though some of her claims failed." Id. at 339 (citation omitted). Fee awards in a lodestar case do not need to be "strictly proportionate to damages," although courts may consider proportionality when setting the proper amount of fees. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. et al., 745 F.3d at 6; *see* City of Riverside, 477 U.S. at 565, 574 (proportionality not required when awarding a fee award seven times greater than damages).

Here, Plaintiff prevailed on one claim for retaliation under federal and Puerto Rican law. (Docket No. 342). She sought: (i) a preliminary and permanent injunction; (ii) compensatory damages of at least $300,000; (iii) punitive damages of at least $300,000; and (iv) costs and attorneys' fees. (Docket No. 1 at 23-24). Plaintiff was denied permanent injunctive relief and punitive damages but obtained a stipulated preliminary injunction and $300,000 in compensatory damages under federal and Puerto Rican law. (Docket Nos. 50; 339 and 342). The Court finds that Plaintiff achieved significant success in the present case and that there is

a strong public policy interest in protecting employees who bring sexual harassment complaints to their employers. However, given Plaintiff's unsuccessful sexual harassment claim and lack of permanent injunctive relief, the Court will adjust the lodestar calculation downwards.

Defendant points to various docket entries that purportedly show time spent on unsuccessful aspects of Plaintiff's claims that should be "excluded in its entirety." (Docket No. 389 at 15-19). However, many of the entries Defendant points to involve block-billing and appear to incorporate both successful and unsuccessful aspects of Plaintiff's case. For example, a February 26, 2024, time entry for 7.30 hours includes six time entries including legal research on the "factual nature of sexual harassment" and "reasonableness of employer response and sexual harassment policy in place." Id. at 17. While the former appears to refer to the sexual harassment claim, the latter could apply to research done on Plaintiff's retaliation claim. Excluding these entries as a group would be inappropriate.

The Court also observes that little in-court billing time was spent on Plaintiff's unsuccessful claims. See Morales-Diaz v. P.R. Elec. Power Auth., 2014 WL 12889342, at *4 (D.P.R. Sept. 11, 2014) (plaintiff's in-court hours should not be cut down when most of those hours were spent on her successful claims that went to trial, not those dismissed by summary judgment); De Jesus Nazario v.

Morris Rodriguez, 554 F.3d 196, 208 (1st Cir. 2009). Plaintiff dismissed her sexual harassment claims on April 1, 2024, at which point Plaintiff's attorneys had billed less than two hours of in-court time. (Docket Nos. 197 and 365-2). The overwhelming majority of in-court time (over 180 hours), including all time spent at trial, dealt only with Plaintiff's surviving retaliation claims. (Docket Nos. 365-2 and 365-8).

While Defendant is overzealous in the amount of hours it seeks to remove from Plaintiff's fee award, Plaintiff's ample use of block-billing makes it difficult for the Court to determine whether the hours billed were reasonably expended as a "satisfactory basis" for a fee award. Hensley, 461 U.S. at 434; *see also* Torres-Rivera, 524 F.3d at 336 (courts may discount generically recorded hours). The Court declines Defendant's suggestion that Puerto Rican contingency fee laws should restrict the ultimate amount of Plaintiff's fee award. (Docket No. 389 at 8). The Court has carefully weighed Plaintiff's unsuccessful claims and the overall difficulty of assessing the reasonableness of time expended by Plaintiff against her successful claims, compensatory damages, and effective use of in-court billing time. The Court exercises its discretion to reduce the initial lodestar amount by **twenty percent**, for a reduction of **$74,332.04**. *See*, *e.g.*, Lipsett, 975 F.2d at 937 (court may use broad discretion in determining fee awards); Pérez-Sosa, 22 F.4th at 320 (same).

### *iii. Other purportedly unsuccessful claims*

Defendant notes that Plaintiff only received compensatory damages on her retaliation claims and failed to prevail on her sexual harassment claims or requests for punitive damages and equitable and injunctive relief. (Docket No. 389 at 12). However, Defendant appears to conflate Plaintiff's claims (sexual harassment and retaliation under federal and Puerto Rican law) with her requests for relief (equitable and injunctive relief, damages, costs, pre-judgement interests, and attorneys' fees), and later corrects this assertion further on in the record. (Docket Nos. 389 at 12 and 409 at 10). Plaintiff's unsuccessful requests for relief are not causes of action. *See* Morales-Diaz, 2014 WL 12889342, at *4 (requests for relief do not provide causes of action). Defendant's assertions to the contrary have no legs.

### *iv. Final lodestar award*

Having determined a reasonable number of hours, a reasonable billing rates, and the circumstances warranting adjustment of the final award, the Court will therefore award Ms. García **$297,328.16** in attorneys' fees.

### B. <u>Reasonable Costs</u>

In addition to attorneys' fees, Ms. García requests $4,312.90 in costs incurred on certified court translations and photocopies. (Docket No. 365 at 17). After reviewing the costs submitted by Plaintiff, the Court makes the following adjustments.

### 1. Translations

Plaintiff requests $3,152.40 for certified court translations provided by a company called Translations & More. Id.; (Docket No. 365-3 at 2-6). Plaintiff provides invoices for these charges showing the length of each document translated and notes that the certified court translations were necessary to oppose summary judgment and for trial. (Docket Nos. 365 at 12 and 365-3). However, Plaintiff does not explain why at least one of three invoices appears to show that Plaintiff paid for expedited translation, which would have increased the overall cost. (Docket No. 365-3 at 2 ("immediate" turnaround time)). It is also unclear what documents Plaintiff had translated, and why they would have been helpful in the litigation. Id. Accordingly, the Court will reduce these expenses by **fifteen percent**, for a reduction of **$472.86**. *See* Carrero, 2024 WL 3042748 at *9 (reducing translation expenses by twenty percent when there was no detailed description of translation and projects were paid to be rushed) (*cf*. Pérez-Sosa, 22 F.4th at 329-30)).

### 2. Photocopies

Plaintiff requests $1,160.50 for photocopies of unknown documents. (Docket No. 365-3 at 7-8). Plaintiff provides two invoices showing the amount charged, but the invoices only show prices for "professional services" and do not explain the content or number of pages photocopied. Id. Plaintiff does not provide

further elaboration on this expense. (Docket No. 365). Without more information, the Court cannot determine the reasonableness of this expense and will treat it analogously to generic or block-billed entries. *See* Carrero, 2024 WL 3042748 at *8 (citations omitted). The Court will reduce these expenses by **twenty percent**, for a reduction of **$232.10**. *See also* Guillemard-Ginorio, 603 F.Supp.2d at 328 (allowing photocopying expenses for award of attorney's fees under § 1988).

In total, the Court will reduce Plaintiff's costs request of $4,312.90 by **$704.96,** resulting in a costs award of **$3,607.94.**

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's *Motion for Attorneys' Fees and Litigation Expenses* at Docket No. 365. Given the Court's determination that the proper attorneys' fee award is **$297,328.16** and the proper litigation expenses award is **$3,607.94,** the total award of legal expenses is $300,946.10. Accordingly, CSIF **SHALL** pay **$300,936.10** to Ms. García.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of November 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE